OPINION
M. SMITH, Circuit Judge:
Objectors Kimberly Schratwieser and Theodore Frank (Objectors) appeal the district court’s orders granting final approval to a class action settlement between Hewlett-Packard Company (HP) and a nationwide class of consumers who purchased certain HP inkjet printers between September 6, 2001 and September 1, 2010. The district court approved a settlement that provides both coupon and injunctive relief to the class members. The district court also approved an award of attorneys’ fees in the amount of $1,500,000 and costs in the amount of $596,990.70.
Objectors argue that the settlement is neither fair, reasonable, nor adequate, as required by Federal Rule of Civil Procedure 23(e)(2) and Section 3 of the Class Action Fairness Act (CAFA), codified at § 28 U.S.C. 1712(e). Objectors contend that the settlement is the product of tacit collusion between class counsel and HP. Objectors also challenge the fee award, arguing it too violates CAFA, and specifically § 1712(a)-(c), which govern the calculation of attorneys’ fees in class action cases containing a coupon component. Because we agree that the fees award violates CAFA, we do not address any of Objectors’ other contentions. See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir.1998) (holding that a class action settlement “must stand or fall in its entirety”); see also In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 945-46 (9th Cir.2011) (noting that vacatur of a fees award necessitates invalidation of a settlement approval order where the parties “expressly negotiated” a potentially unreasonable amount of fees). When a settlement provides for coupon relief, either in whole or in part, any attorney’s fee “that is attributable to the award of coupons” must be calculated using the re *1176 demption value of the coupons. § 1712(a). Since the district court awarded fees that were “attributable to” the coupon relief, but failed to first calculate the redemption value of those coupons, we reverse the orders of the district court and remand for further proceedings consistent with this opinion.
FACTUAL AND PROCEDURAL BACKGROUND
Plaintiffs filed three putative class actions in the Northern District of California alleging that HP engaged in unfair business practices relating to its inkjet printers’ use of ink cartridges.[1] Each of the three actions was aggressively litigated, and attorneys for both sides engaged in extensive motions practice and discovery. Ultimately, however, plaintiffs suffered numerous setbacks including dismissal of several claims on the pleadings, denial of nationwide class certification in one of the actions, and a determination by the district judge presiding over all of the lawsuits that the plaintiffs’ evidence of injury and causation was “weak.”
In August 2010, more than five years after the first action was filed, the parties agreed to a global settlement. In exchange for the plaintiffs’ release of all claims against it, HP agreed to: (1) provide eligible class members with up to $5 million in “e-credits” redeemable for printers and printer supplies on HP’s website; (2) make additional disclosures on its website, in its user manuals, or in its software interfaces to explain its business practices to future purchasers of HP printers and ink; (3) pay up to $950,000 for class notice and settlement administration costs; and (4) pay up to $2,900,000 in attorneys’ fees and expenses. The “e-credits” — a euphemism for coupons — expire six months after issuance, are non-transferable, and cannot be used with other discounts or coupons.[2] By the express terms of the settlement, no coupons may issue until after all appeals are resolved.
On October 1, 2010, the district court consolidated the three putative class actions for settlement, granted preliminary settlement approval, provisionally certified a nationwide settlement class, and directed that the parties provide notice of the settlement. In compliance with the court’s order, the parties provided notice via email, publication, and online advertisements, reaching approximately 74 percent of potential class members. Of the millions of class members who received notice, three filed formal objections, 458 submitted informal comments, 810 opted out of the settlement, and 122,000 filed claims.
On January 28, 2011, the district court held a fairness hearing at which Objectors appeared. During the hearing, the district judge noted that the underlying actions had been litigated heavily and that there were several motions “where the Court had an opportunity to evaluate the *1177 strength of the claims.” Based on its previous evaluation, the court concluded that “[t]he claims are not particularly strong” and weighed in favor of settlement.
On March 29, 2011, the district court granted final settlement approval and certified a nationwide settlement class. The court determined that the settlement was fair, reasonable, and adequate because: (1) “the settlement was arrived at as a result of arms-length, non-collusive negotiations”; (2) due to the complexity, expenses, and duration of the litigation, class members would receive “meaningful benefits on a much shorter time frame than otherwise possible”; (3) class counsel supported the settlement; (4) there was “no reason to believe that the posture of any of the cases would improve through further litigation”; and (5) the number of class members disapproving of the settlement is “miniscule by any measure.”
The court also issued a separate ruling on class counsels’ request for fees and expenses. Although the plaintiffs submitted bills for over $7 million in fees and expenses, class counsel requested only the portion of its lodestar HP agreed to pay— $2.3 million in fees and roughly $600,000 in costs. Citing its independent duty to determine the reasonableness of any fees award, the court meaningfully reduced the proposed award. The court held that the lodestar method was applicable under section 1712(b)(1) of CAFA and that the “key consideration” in determining the appropriate fees is reasonableness in light of the results actually achieved. Analyzing those results, the court acknowledged that while the e-credits were worth significantly less than their face value, the injunctive relief would confer some benefit on class' members, although nothing close to the $16-41 million estimated by plaintiffs.[3] The court estimated the “ultimate value” of the settlement to the class at roughly $1.5 million. Recognizing that it would be improper to award fees that outstrip the calculated class benefit, the court ordered HP to pay a reduced lodestar amount of $1.5 million and $596,990.70 in costs. Objectors timely appealed both the Approval and Fees Orders.
JURISDICTION AND STANDARD OF REVIEW
We have jurisdiction under 28 U.S.C. § 1291. We review a district court’s award of fees and costs to class counsel, and its method of calculation, for abuse of discretion. In re Bluetooth, 654 F.3d at 940 (citing Lobatz v. U.S. W. Cellular of Cal., Inc., 222 F.3d 1142, 1148-49 (9th Cir.2000)).
DISCUSSION
Congress passed CAFA “primarily to curb perceived abuses of the class action device.” Tanoh v. Dow Chem. Co., 561 F.3d 945, 952 (9th Cir.2009). One such perceived abuse is the coupon settlement, where defendants pay aggrieved class members in coupons or vouchers but pay class counsel in cash. See generally Sarah S. Vance, A Primer on the Class Action Fairness Act of 2005, 80 Tul. L. Rev. 1617, 1632-33 (2006); Geoffrey P. Miller & Lori S. Singer, Nonpecuniary Class Action Settlements, 60 Law & Contemp. Probs. 97, 102, 107-12 (1997). Congress was rightful *1178 ly concerned with such settlements: by decoupling the interests of the class and its counsel, coupon settlements may incentivize lawyers to “negotiate settlements under which class members receive nothing but essentially valueless coupons, while the class counsel receive substantial attorney’s fees.”[4] S. Rep. 109-14, at 29-30 (2005); see also Christopher R. Leslie, A Market-Based Approach to Coupon Settlements in Antitrust and Consumer Class Action Litigation, 49 UCLA L. Rev. 991, 991 (2002) (“Because class counsel are paid in cash, the attorneys have insufficient interest in ensuring that the settlement coupons confer value on the class.”).
Section 1712 codifies Congress’s effort to regulate coupon settlements. That regulation takes two forms. The first invites increased judicial scrutiny of coupon settlements generally. § 1712(e); see also Synfuel Techs., Inc. v. DHL Express (USA), Inc., 463 F.3d 646, 653-54 (7th Cir.2006); True v. Am. Honda Motor Co., 749 F.Supp.2d 1052, 1069 (C.D.Cal.2010); S. Rep. No. 109-14, at 27 (stating that CAFA “requires greater scrutiny of coupon settlements”). The second involves a series of specific rules that govern the award of attorneys’ fees in coupon class actions. § Í712(a)-(d); see also Vance, supra, at 1632-33. Our sole task on this appeal is to interpret and apply the attorneys’ fees provisions of § 1712.
I.
Class counsel are duty bound to represent the best interests of class members. Staton v. Boeing Co., 327 F.3d 938, 960 (9th Cir.2003). Still, because the interests of class members and class counsel nearly always diverge, courts must remain alert to the possibility that some class counsel may “urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees.”[5] Weinberger v. Great N. Nekoosa Corp., 925 F.2d 518, 524 (1st Cir.1991).
Typically, courts try to ensure faithful representation by tying together the interests of class members and class counsel. That is, courts aim to tether the value of an attorneys’ fees award to the value of the class recovery. See, e.g., Hensley v. Eckerhart, 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (explaining that “the most critical factor [in determining an appropriate attorneys’ fee] is the degree of success obtained”); McCown v. City of Fontana, 565 F.3d 1097, 1103-05 (9th Cir.2009). Where both the class and its attorneys are paid in cash, this task is fairly effortless. The district court can assess the relative value of the attorneys’ fees and the class relief simply by comparing the amount of cash paid to the attorneys with the amount of cash paid to the class. The more valuable the class recovery, the greater the fees award. *1179 Hensley, 461 U.S. at 436, 103 S.Ct. 1933. And vice versa.
But where class counsel is paid in cash, and the class is paid in some other way, for example, with coupons, comparing the value of the fees with the value of the recovery is substantially more difficult. Unlike a cash settlement, coupon settlements involve variables that make their value difficult to appraise, such as redemption rates and restrictions. See Miller & Singer, supra, at 111. For instance, a coupon settlement is likely to provide less value to class members if, like here, the coupons are non-transferable, expire soon after their issuance, and cannot be aggregated.[6] See Leslie, supra, at 1014-27; see also James Tharin & Brian Blockovich, Coupons and the Class Action Fairness Act, 18 Geo. J. Legal Ethics 1443, 1445 (2005). Of course, consideration of these variables necessarily increases the complexity of the district court’s task — comparing the ultimate “value” of the coupon relief with the value of a proposed fees award. And perhaps more importantly, the additional complexity also provides class counsel with the opportunity to puff the perceived value of the settlement so as to enhance their own compensation.[7] As one commentator succinctly put it, “[p]aying the class members in coupons masks the relative payment of the class counsel as compared to the amount of money actually received by the class members.” Leslie, supra, at 1049.
Congress was well aware of these problems when it passed § 1712 of CAFA. See, e.g., S. Rep. 109-14, at 16-20 (listing dozens of examples of coupon settlements “in which most — if not all — of the monetary benefits went to the class counsel, rather than the class members those attorneys were supposed to be representing”). Indeed, if the legislative history of CAFA clarifies one thing, it is this: the attorneys’ fees provisions of § 1712 are intended to put an end to the “inequities” that arise when class counsel receive attorneys’ fees that are grossly disproportionate to the actual value of the coupon relief obtained for the class. See id. at 29-32. This point cannot be overemphasized, for we can only properly interpret CAFA’s text if we keep the statute’s purposes clearly in mind. See Dolan v. U.S. Postal Serv., 546 U.S. 481, 486, 126 S.Ct. 1252, 163 L.Ed.2d 1079 *1180 (2006) (“Interpretation of a [statutory] word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis.”). We now turn to that interpretation.
II.
Objectors argue that the attorneys’ fees award in this case violates § 1712(a)-(c), which govern the calculation of attorneys’ fees in coupon class action cases.[8] Those sections provide in full:
(a) Contingent fees in coupon settlements. — If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney’s fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed.
(b) Other attorney’s fee awards in coupon settlements.—
(1) In general. — If a proposed settlement in a class action provides for a recovery of coupons to class members, and a portion of the recovery of the coupons is not used to determine the attorney’s fee to be paid to class counsel, any attorney’s fee award shall be based upon the amount of time class counsel reasonably expended working on the action.
(2) Court approval. — Any attorney’s fee under this subsection shall be subject to approval by the court and shall include an appropriate attorney’s fee, if any, for obtaining equitable relief, including an injunction, if applicable. Nothing in this subsection shall be construed to prohibit application of a lodestar with a multiplier method of determining attorney’s fees.
(c)Attorney’s fee awards calculated on a mixed basis in coupon settlements. — If a proposed settlement in a class action provides for an award of coupons to class members and also provides equitable relief, including injunc-tive relief—
(1) that portion of the attorney’s fee to be paid to class counsel that is based upon a portion of the recovery of the coupons shall be calculated in accordance with subsection (a); and
(2) that portion of the attorney’s fee to be paid to class counsel that is not based upon a portion of the recovery of coupons shall be calculated in accordance with subsection (b).
§ 1712(a)-(c).
In construing the provisions of a statute, we first analyze its language to determine whether its meaning is plain. Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 951 (9th Cir.2009) (citing McDonald v. Sun Oil Co., 548 F.3d 774, 780 (9th Cir.2008)). “The preeminent canon of statutory interpretation requires us to presume that the legislature says in a statute what it means and means in a statute what is says there. Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous.” Id. (internal alteration omitted) (quoting BedRoc Ltd., LLC v. United States, 541 U.S. 176, 183, 124 S.Ct. 1587, 158 L.Ed.2d 338 (2004)). Where the statutory text is am *1181 biguous, however, we may “look to other interpretive tools, including the legislative history” in order to determine the statute’s best meaning. Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 567, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005).
Both the majority of our panel and our dissenting colleague agree that CAEA is poorly drafted. We have previously commented on the “clumsy” and “bewildering” wording of other provisions of CAFA. See, e.g., Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676, 681, 686 (9th Cir.2006) (per curiam). Unfortunately, § 1712 fares no better. After all, CAFA “resulted from years of intense lobbying ... partisan wrangling, and, following two successful filibusters, fragile compromises.” Stephen B. Burbank, The Class Action Fairness Act of 2005 in Historical Context: A Preliminary View, 156 U. Pa. L. Rev. 1439, 1441 (2008). Still, when § 1712(a)-(c) are “interpreted collectively and in context, and read together with the statute’s purpose and legislative history,” Dissent at 1191, we believe their meaning is clear.
A.
Subsection 1712(a) states, in relevant part, that “the portion of any attorney’s fee award to class counsel that is attributable to the award of coupons shall be based on the value to class members of the coupons that are redeemed.” Congress’s use of the words “any” and “shall” indicate that subsection (a) is not permissive. See Alabama v. Bozeman, 533 U.S. 146, 153, 121 S.Ct. 2079, 150 L.Ed.2d 188 (2001) (“The word ‘shall’ is ordinarily ‘the language of command.’ ”) (quoting Escoe v. Zerbst, 295 U.S. 490, 493, 55 S.Ct. 818, 79 L.Ed. 1566 (1935)).[9] If the district court awards “any” attorney’s fees, and those attorney’s fees are “attributable to the award of coupons,” then the fees award must be calculated in the manner prescribed by § 1712(a) (ie., using the redemption value of the coupons). The crucial question, therefore, is what it means for an attorneys’ fees award to be “attributable to” the award of coupons.
 Congress did not define the term “attributable to” anywhere in CAFA. Where a statute does not define a key term, we look to the word’s ordinary meaning. See Schindler Elevator Corp. v. United States ex rel. Kirk, — U.S.-, 131 S.Ct. 1885, 1891, 179 L.Ed.2d 825 (2011) (citations omitted); see also Scalia & Garner, supra, at 69 (“The ordinary-meaning rule is the most fundamental semantic rule of interpretation.”). Fortunately for our purposes, the meaning of the term “attributable to” is plain. “Attributable to” means “to explain as caused or brought about by: regard as occurring in consequence or on account of.” Webster’s Third New International Dictionary (2002). Alternatively, it means “to regard as arising from a particular cause or source; ascribe.” American Heritage Dictionary of the English Language (5th ed. 2011). Thus, applying the dictionary definition, an attorneys’ fees award is “attributable to” an award of coupons where the attorneys’ fees award is a “consequence” of the award of coupons. Or, put differently, attorneys’ fees are “attributable to” an award of coupons where “the [singular] award of the coupons” is the condition precedent to the award of attorneys’ fees.[10] § 1712(a) (emphasis added).
*1182 Were this conclusion in any doubt, a simple hypothetical confirms the majority’s understanding of § 1712(a). . Consider a settlement that only provides for coupon relief. In such a case, the portion of any attorneys’ fees award that is attributable to the award of the coupons must be one hundred percent. Because the settlement contains only coupons, the fees award cannot be “attributable to” anything but the coupons.
Of course, one might argue that the fees award in this hypothetical case is “attributable to” the work of class counsel on the action, rather than the coupons. But one would be mistaken. Attorney’s fees are never “attributable to” an attorney’s work on the action. They are “attributable to” the relief obtained for the class. See Class Plaintiffs v. Jaffe & Schlesinger, P.A., 19 F.3d 1306, 1308 (9th Cir.1994). An attorney who works incredibly hard, but obtains nothing for the class, is not entitled to fees calculated by any method. For although class counsel’s hard work on an action is presumably a necessary condition to obtaining attorney’s fees, it is never a sufficient condition. Plaintiffs attorneys don’t get paid simply for working; they get paid for obtaining results. Because it is the class relief that is both a necessary and a sufficient condition to an award of attorney’s fees, it follows that an attorney’s fees award can only be “attributable to,” or the consequence of, the class relief, not the attorney’s hard work. Hence, returning to the language of § 1712(a), where the “portion” of the attorneys’ fees that are “attributable to the award of the coupons” is necessarily one hundred percent — as in a ease where the settlement provides only coupon relief— “any attorney’s fee award to class counsel ... shall be based on the value to class members of the coupons that are redeemed.” § 1712(a); see also S. Rep. 109-14, at 30 (“[I]n class action settlements in which it is proposed that an attorney fee award be based solely on the purported value of the coupons awarded to class members, the fee award should be based on the demonstrated value of coupons actually redeemed by the class members.”).
Our dissenting colleague disagrees and argues that “[i]n some cases, no portion of the attorney’s fees will be ‘attributable to’ the coupon award in the sense of calculated as a percentage of the coupon value, and therefore § 1712(a) will not apply.” Dissent at 1194 (emphasis added). Put simply, the dissent is premised on the argument that Congress understood the term “attributable to” in § 1712(a) to mean “calculated as a percentage of’ and the term “award” to be synonymous with “value.” But the dissent points to no dictionary, case, or any other source that supports that view. Not one. Nor does the dissent provide any principled reason for ignoring the plain and ordinary meaning of the statutory text.[11] And if we accept, as *1183 we must, that Congress meant to give the terms “attributable to” and “award” their ordinary (dictionary) definitions, the dissent’s analysis is rendered untenable. For instance, as discussed above, in a case where the class receives only coupon relief, it simply cannot be true that “no portion of the attorney’s fees will be ‘attributable to’ the coupon award.” Dissent at 1194. We decline to join the dissent’s attempt to render § 1712(a) a nullity. See Duncan v. Walker, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (explaining that courts are “reluctant to treat statutory terms as surplusage in any setting” particularly where the terms occupy a “pivotal place in the statutory scheme”) (internal alterations and citations omitted); see also Robert H. Klonoff & Mark Herrmann, The Class Action Fairness Act: An Ill-Conceived Approach to Class Settlements, 80 Tul. L. Rev. 1695, 1699 (2006) (observing that § 1712(a) is “[t]he principal provision” Congress passed to address abusive coupon settlements).
B.
Whereas § 1712(a) governs cases where the class obtains only coupon relief, § 1712(b) applies in situations where a coupon settlement also provides for non-coupon relief, such as equitable or injunc-five relief. Specifically, subsection (b) requires that if “a portion. of the recovery of the coupons is not used to determine the attorney’s fee to be paid to class counsel, any attorney’s fee shall be based upon the amount of time class counsel reasonably expended working on the action.” § 1712(b)(1) (emphasis added). Like § 1712(a), the language of § 1712(b) is not permissive — if class counsel wants to be paid “any” fees, and the “recovery of the coupons is not used to determine” those fees, the entirety of the payment “shall be” calculated “based upon the amount of time class counsel reasonably expended working on the action,” i.e., using the lodestar method. Section 1712(b)(2) further confirms that a court may, in its discretion, apply an appropriate multiplier to any lodestar amount it awards under subsection (b)(1) for obtaining non-coupon relief.[12]
Despite the statutory language indicating that § 1712(b) only applies where “the recovery of the coupons is not used to determine the attorney’s fee to be paid to class counsel,” the dissent argues that a district court can award lodestar fees under § 1712(b) to compensate class counsel for obtaining either coupon relief or non-coupon relief.[13] To reach that conclusion, however, our dissenting colleague must en *1184 tirely ignore the language of § 1712(a). As we have already explained, the unambiguous command of § 1712(a) requires that “any attorney’s fee” awarded for obtaining coupon relief be calculated using the redemption value of the coupons. The dissent’s interpretation of § 1712(b) would read § 1712(a) completely out of the statute. “Under accepted canons of statutory interpretation, we must ... mak[e] every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.” Boise Cascade Corp. v. United States EPA, 942 F.2d 1427, 1432 (9th Cir.1991); see also Scalia & Garner, supra, at 180 (“[I]t is invariably true that intelligent drafters do not contradict themselves .... ”).
The dissent’s interpretation of § 1712(b) is also belied by that subsection’s legislative history. For instance, the Senate Report from the Committee on the Judiciary states that “Section 1712(b) confirms the appropriateness of determining attorney’s fees on [a lodestar] basis in connection with a settlement based in part on coupon relief.” S. Rep. 109-14, at 30 (emphasis added). The Committee Report does not say that § 1712(b) “confirms the appropriateness” of awarding lodestar fees in cases based “solely” on coupon relief. As already noted, if the Committee Report did say that, it would nullify the command of § 1712(a). Rather, the legislative history of § 1712(b) confirms the majority’s understanding of § 1712(b) — a district court may award lodestar fees under subsection (b)(1) but only where the settlement is based “in part” on coupon relief. Id.
C.
To the extent that § 1712(a) and (b) leave any ambiguity regarding the meaning of CAFA’s attorneys’ fees provisions, § 1712(c) eliminates that doubt. Section 1712(c) begins by defining its scope: subsection (c) applies whenever a settlement provides both coupon and equitable relief.[14] In such “mixed” settlements, § 1712(c) serves to ensure that class counsel get paid for all of the benefits they secure for the class. Specifically, the statutory language in § 1712(c), which in part incorporates the standard of § 1712(a), establishes this general rule: If a settlement gives Coupon and equitable relief and the district court sets attorneys’ fees based on the value of the entire settlement, and not solely on the basis of injunctive relief, then the district court must use the value of the coupons redeemed when determining the value of the coupons part of the settlement.
The practical effect of § 1712(c) is that the district court must perform two separate calculations to fully compensate class counsel. First, under subsection (a), the court must determine a reasonable contingency fee based on the actual redemption value of the coupons awarded.[15] *1185 Second, under subsection (b), the court must determine a reasonable lodestar amount to compensate class counsel for any non-coupon relief obtained.[16] This lodestar amount can be further adjusted upwards or downwards using an appropriate multiplier. § 1712(b)(2). In the end, the total amount of fees awarded under subsection (c) will be the sum of the amounts calculated under subsections (a) and (b).
Although we believe the language of § 1712(c) is clear, we note that the legislative history confirms our understanding of § 1712(c). Describing that section, the legislative history states:
In some class action settlements, the terms may be a combination of coupon relief, plus some form of equitable relief, including an injunction. In such circumstances, the settlement may also include fees for obtaining the equitable relief. Thus, if a proposed settlement provides for both coupons and equitable relief, then the portion of the award that is a contingent fee based on the value of the coupons must be calculated based on the value of the redeemed coupons, and the portion not based on the value of the coupons should be based on the time spent by class counsel on the case.
S. Rep. 109-14, at 31 (emphasis added). The above-quoted passage makes clear that CAFA only permits district courts to award lodestar fees when those fees are “not based on the value of the coupons.” Id. That is, § 1712(c) confirms that lodestar fees may only be awarded in exchange for obtaining non-coupon relief. Indeed, it can be no other way. If a settlement contains only equitable relief, then it is not a coupon settlement and § 1712 simply does not apply. If a settlement contains only coupon relief, however, § 1712(a) must apply, because the attorneys’ fees awarded in such a case must necessarily be “based on the value of the coupons.” Id; see supra Part II.A. Section 1712(b), therefore, can only come into play when a settlement contains both coupon relief and equitable relief — precisely the situation described in § 1712(c).
The dissent attempts to explain away the meaning of § 1712(c), but is once again tripped up by the language of § 1712(a). For instance, our dissenting colleague argues that “[njothing in the text of either subparagraph [of § 1712(c) ] excludes the possibility that, in cases involving both coupon and equitable relief, no portion of the fee award is to be paid in the manner addressed by that paragraph.” Dissent at 1197. Our colleague is mistaken. Section 1712(c) directs the district court to calculate fees in mixed settlements “in accordance with” subsections (a) and (b). And the language of § 1712(a) does “exclude the possibility” that lodestar fees may be awarded in exchange for coupon relief. By incorporating the standard of § 1712(a) into its own, then, § 1712(c) dictates that lodestar fees may only be awarded where class counsel obtains non-coupon relief.
Finally, we note that in addition to its other flaws, the dissent’s interpretation of § 1712 runs counter to one of the main purposes of CAFA: discouraging coupon settlements — particularly those where presumably valuable (but actually worthless) coupons form some part of the basis for an attorneys’ fees award. See supra Part I. By tying attorney compensation to the actual value of the coupon relief, Congress aimed to prevent class counsel from walking away from a case with a windfall, while class members walk away with nothing. See S. Rep. 109-14, at 30 (“[T]he fee award should be based on the demonstrated value *1186 of coupons actually redeemed by the class members. Thus, if a settlement agreement promises the issuance of $5 million in coupons to the putative class members, but only 1/5 of potential class members actually redeem the coupons at issue, then the lawyer’s contingency fee should be based on a recovery of $1 million — not a recovery of $5 million.”). The dissent, however, would apparently allow district courts to award attorneys’ fees based entirely on the perceived value of the coupons. Indeed, our dissenting colleague argues that we should permit district courts to award lodestar fees in exchange for coupon relief without ever requiring the district court to consider the actual value of the class relief, as measured by the coupons’ redemption value.[17] Thus, in spite of Congress’s clear intention to tie class counsels’ compensation to that of the class, the dissent asks us to tolerate the precise abuse § 1712 set about to eliminate.[18] We decline to do so.
III.
We now return to the Objectors’ contention that the district court erred when it awarded $1.5 million in attorneys’ fees using solely the lodestar method, without first calculating the redemption value of the coupons. We agree with Objectors that the district court erred. The district court awarded lodestar fees based on its supposition that the “ultimate value” of this settlement is $1.5 million. This $1.5 million figure included the court’s valuation of both the injunctive and coupon relief. But § 1712(a) and (c) required the district court to calculate the redemption value of the coupons before awarding any attorneys’ fees that were “attributable to” the coupon relief. See supra Part II. Hence, the district court abused its discretion where it made a rough estimate of the ultimate value of this settlement, and then awarded fees in exchange for obtaining coupon relief without considering the redemption value of the coupons.
We note, however, that the responsibility for this error lies principally with the parties. Because the settlement agreement specifies that no coupons may issue until after entry of a final judgment, it would have been impossible for the district court to calculate the redemption value of the coupons as required by § 1712(a). By structuring the settlement in this way, the parties essentially invited the error here. Of course, had the settlement been structured so that the redemption value of the coupons was ascertainable before final settlement approval, plaintiffs’ attorneys would have been entitled to seek compensation for both the coupon and the injunc-tive relief obtained for the class.[19] See *1187 § 1712(c). Because the parties did not do so, however, we are required to reverse.
CONCLUSION
Under § 1712 of CAFA, a district court may not award attorneys’ fees to class counsel that are “attributable to” an award of coupons without first considering the redemption value of the coupons. A district court may, however, award lodestar fees to compensate class counsel for any non-coupon relief they obtain, such as in-junctive relief. Because the attorneys’ fees award in this case violates § 1712, we reverse and remand to the district court for further proceedings consistent with this opinion.
REVERSED, VACATED AND REMANDED.

. The first action, Ciolino, was filed on June 16, 2005, and alleged that HP misled consumers into believing that replacement of an ink cartridge was necessary when the cartridge was not empty, and was capable of additional printing. The Rich action was filed on May 22, 2006, and alleged that HP failed to disclose that its color printers use color ink to print black and white text and images, a process known in the printing industry as "un-derprinting.” The Biennis action was filed on January 17, 2007, and alleged that HP concealed that certain of its ink cartridges contained an "expiration date,” after which time the cartridges would no longer work regardless of how much ink remained in the cartridge.

. The face value of the coupons varies depending on class membership. Under the settlement approved by the district court, the Ciolino class members are to receive $5 coupons for each affected HP printer they own, Rich class members are to receive $2 coupons, and Biennis class members are to receive $6 coupons.

. We agree with our dissenting colleague that the district court could reasonably- assume that “injunctive relief would be of benefit to some number of class members, because the groups of present and future consumers of HP printer products overlap.” Dissent at 1189 n.4; see also Kwikset Corp. v. Superior Court, 51 Cal.4th 310, 120 Cal.Rptr.3d 741, 246 P.3d 877, 895 (2011) (reaffirming that injunctions "are the primary form of relief available under [California's unfair competition laws] to protect consumers from unfair business practices,” while monetary awards are a "type of ancillary relief”).

. Although we recognize that coupon settlements are generally disfavored, we do not mean to cast aspersions on all coupon settlements. The legislative history of CAFA makes clear that Congress did "not intend to forbid all non-cash settlements.” S. Rep. No 109-14, at 31. Indeed, coupon or other in-kind settlements may be particularly appropriate in situations "where they provide real benefits to consumer class members.” Id. For instance, coupon settlements may be appropriate where a defendant is in financial distress or where class members have repeat-business relationships with the defendant. See Lisa M. Mezzetti & Whitney R. Case, The Coupon Can Be the Ticket: The Use of “Coupon” and Other Non-Monetary Redress in Class Action Settlements, 18 Geo. J. Legal Ethics 1431, 1433-34 (2005).

. See generally Leslie, supra, at 1042-52 (describing how agency costs — which "exist when a principal hires an agent to perform a task but the agent's remuneration is not directly tied to the principal's gain such that the agent may increase her payoff by being faithless” — create a risk of collusion between defendants and class counsel).

. Objectors presented evidence that the prices charged at HP.com — the only retailer that will accept the settlement coupons — are higher than those charged by other retailers. For instance, Objectors presented evidence that the same HP "Combo Pack Ink Cartridge” sells for $42.99 on HP.com, while selling for $36.99 on Amazon.com. The $6 price difference is equal to the face value of the e-credits to be awarded to Biennis class members, and is greater than the face value of the e-credits to be awarded to the Rich and Ciolino class members. Thus, with the possible exception of the Biennis class members, Objectors have presented evidence that tends to show that the redemption rate of the e-credits may be very low; presumably Rich and Ciolino class members will prefer to allow their coupons to expire rather than pay a higher price solely to gain the satisfaction of using their coupons. Considered together with the numerous other restrictions on the offered e-credits, we strongly disagree with the dissent's assessment that "[g]iven the effort involved in obtaining the coupons, it was fair [for the district court] to assume that most of the individuals who had applied for the e-credits would redeem them.” Dissent at 1189 n.4; see also Leslie, supra, at 1030-32 (describing how a defendant "can render settlement coupons worthless by simply increasing the base price of their product by the face value of the coupon.”).

. We do not mean to suggest any intentional fiduciary breach by class counsel here. But "[e]ven if the plaintiff's attorney does not consciously or explicitly bargain for a higher fee at the expense of the beneficiaries, it is very likely that this situation has indirect or subliminal effects on the negotiations.” Staton, 327 F.3d at 964 (quoting Court Awarded Attorney Fees, Report of the Third Circuit Task Force, 108 F.R.D. 237, 266 (1985)).

. Section 1712(d) also relates to the calculation of attorneys’ fees in coupon class actions. Specifically, subsection (d) provides that a district court may "receive expert testimony from a witness qualified to provide information on the actual value to the class members of the coupons that are redeemed.” § 1712(d). That is, subsection (d) allows the district court to receive expert testimony relevant to calculating the redemption value of the coupons, as required by § 1712(a). See, Parts II.A, II.B and II.C, infra. Because the district court here did not attempt to calculate the redemption value of the coupons under § 1712(a), § 1712(d) plays little role in our analysis.

. See also Antonin Scalia &- Bryan A. Gamer, Reading Law: The Interpretation of Legal Texts 112 (2012) ("The traditional, commonly repeated rule [of statutory interpretation] is that 'shall' is mandatory....”).

. Congress used the term "award” twice in § 1712(a); first in the phrase “any attorney’s fee award to class counsel” and again in the phrase "the award of the coupons.” The dissent claims that the word "award” as used in § 1712(a) necessarily refers to the "mone *1182 tary value” of the fees and coupons. Dissent at 1193-94. But this interpretation ignores the plain meaning of the statutory language. An "award” is "something that is conferred or bestowed upon a person.” Webster’s Third New International Dictionary (2002); see also American Heritage Dictionary of the English Language (4th ed. 2000) (defining an "award” as "[s]omething awarded or granted, as for merit”). Hence, the equivalent of the phrase "the award of coupons” is "the grant of coupons” or the "conferral” of coupons. Similarly, the equivalent of the phrase "the portion of any attorney's fee award to class counsel" is "the portion of any attorney’s fee granted to class counsel.” Taken together, the plain language of § 1712(a) commands that "the portion of any attorney’s fee granted to class counsel that is attributable to the grant of the coupons shall be based on the value to class members of the coupons that are redeemed.”

. The dissent relies on the headings of the various subsections of § 1712 in order to create artificial uncertainty about the otherwise plain language of § 1712(a). But "the Supreme Court has cautioned that 'the title of a statute and the heading of a section cannot *1183 limit the plain meaning of the text.’ ” North-star Financial Advisors, Inc. v. Schwab Investments, 615 F.3d 1106, 1120 (9th Cir.2010) (quoting Bhd. ofR.R. Trainmen v. Baltimore & O.R. Co., 331 U.S. 519, 528-29, 67 S.Ct. 1387, 91 L.Ed. 1646 (1947)); see also Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 256, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004).

. The dissent argues that the “use of the word 'include,' and the phrases 'if any' and ‘if applicable,' " in § 1712(b)(2) make clear that the “lodestar fee provided for in subsection (b)(1) is not limited to equitable relief.” Dissent at 1196. Not so. The better reading of subsection (b)(2) is that only “appropriate” lodestar fees should be awarded under § 1712(b)(1). Just because the class obtains equitable or injunctive relief does not mean attorneys’ fees are necessarily appropriate. The phrases "if any” and "if applicable” confirm that a district court may refuse to award any lodestar fees for obtaining equitable or injunctive relief if such fees would not otherwise be warranted. For instance, a district judge might refuse to award any lodestar fees where the value of the equitable or injunctive relief obtained for the class is de minimis.

. The dissent cites to a smattering of district court cases that hold that subsection (b) "allows the calculation of fees in a coupon settlement on the basis of [the] hours class counsel worked.” Dissent at 1196 n. 11. Of course, that is hardly controversial, as we now hold the same. Our dissenting colleague does not cite any cases, however, that hold what she otherwise would — that the lodestar method may be used to award fees in exchange for *1184 class counsel obtaining exclusively coupon relief. We further note that a number of academics who have considered the issue have rejected the dissent's interpretation. See, e.g., Vance, supra, at 1632-33 (noting that "any portion of the attorneys' fee that is based on the coupon award must be based on the value of the coupons redeemed”); Klonoff & Herr-mann, supra, at 1703-04 (observing that CAFA "makes clear that the coupon-related fee award in settlements that include both coupon and noncoupon components will be calculated based on the coupons that are redeemed. The portion of fees based on the equitable relief portion of the settlement must be based on lodestar principles.”).

. Specifically, the first phrase of § 1712(c) reads: "If a proposed settlement in a class action provides for an award of coupons to class members and also provides for equitable relief, including injunctive relief — .”

. Section 1712(c)(1) states: “that portion of the attorney’s fee to be paid to class counsel that is based upon a portion of the recovery of the coupons shall be calculated in accordance with subsection [1712](a)[.]”

. Section 1712(c)(2) provides: "that portion of the attorney's fee to be paid to class counsel that is not based upon a portion of the recovery of the coupons shall be calculated in accordance with subsection [1712](b).”

. If § 1712(a) means anything, it means that Congress has determined that the best way to appraise the size of the benefit class members receive from a coupon settlement is to calculate the redemption value of the coupons.

. It is worth noting that the dissent’s proposed approach would violate not only CAFA, but the Supreme Court’s established attorneys' fees jurisprudence as well. Even under the lodestar method, the district court must adjust the amount of any fees award "to account for the degree of success class counsel attained.” In re Bluetooth, 654 F.3d at 944; see also Hensley, 461 U.S. at 436, 103 S.Ct. 1933. But a court cannot judge counsels’ success without first calculating the value of the class relief. And in a coupon class action, the court cannot value the class relief without knowing the redemption value of the coupons. Thus under Hensley and its progeny, any lodestar cross-check should be performed in reference to the redemption value of the coupons — something our dissenting colleague apparently would not require. It is the dissent’s approach, not the majority's, that "ignores the safeguards that exist independent of CAFA to prevent” class action abuse. Dissent at 1198.

.For example, a fees award can be bifurcated or staggered to take into account the speculative nature of at least a portion of a class recovery. See, e.g., In re Prudential Ins. Co. *1187 Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 334 (3d Cir. 1998) ("The district court’s plan [to bifurcate the fees award was a sound exercise of its discretion that] was designed to overcome the speculative nature of the tentative and imprecise settlement valuations. It took into account the settlement's more definite terms by providing an immediate payment based on a percentage of the guaranteed minimum recovery of $410 million, while requiring future payments to be based on actual results in recognition that the ultimate class recovery is not quantifiable at this point.”); In re AT & T Corp., 455 F.3d 160, 175 (3d Cir.2006) (recognizing that a bifurcated fees structure "obviate[d] the need to guesstimate the value of the settlement.”); see also Foster v. Bd. of Sch. Comm’rs, 810 F.2d 1021, 1024 (11th Cir.1987) (noting district court’s decision to award attorney’s fees to prevailing parties after each stage of a bifurcated trial). We leave open the question how best to award attorneys’ fees under § 1712. See Klonoff & Herrmann, supra, at 1701-02 (discussing procedures district courts might employ to award attorneys’ fees based on the redemption value of coupon relief).