**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| BYRON MCKNIGHT; JULIAN MENA; TODD SCHREIBER; NATE COOLIDGE; ERNESTO MEJIA, individually and on behalf of all others similarly situated, | No. 21-16623 |
| | D.C. No. 4:14-cv-05615-JST |
| Plaintiffs-Appellees, | |
| v. | **OPINION** |
| JENNIFER HINOJOSA, | |
| Objector-Appellant, | |
| v. | |
| UBER TECHNOLOGIES, INC., a Delaware Corporation; RASIER, LLC, a Delaware Limited Liability Company, | |
| Defendants-Appellees. | |

| | |
|---|---|
| BYRON MCKNIGHT; JULIAN MENA; TODD SCHREIBER; NATE COOLIDGE; ERNESTO MEJIA, individually and on behalf of all others similarly situated, | No. 21-16625 |
| | D.C. No. 4:14-cv-05615-JST |
| Plaintiffs-Appellees, | |
| v. | |
| GORDON B. MORGAN, | |
| Objector-Appellant, | |

v.

UBER TECHNOLOGIES, INC., a
Delaware Corporation; RASIER, LLC, a
Delaware Limited Liability Company,

Defendants-Appellees.

BYRON MCKNIGHT; JULIAN MENA;
TODD SCHREIBER; NATE COOLIDGE;
ERNESTO MEJIA, individually and on
behalf of all others similarly situated,

Plaintiffs-Appellees,

v.

ROBERT HUDSON,

Objector-Appellant,

v.

UBER TECHNOLOGIES, INC., a
Delaware Corporation; RASIER, LLC, a
Delaware Limited Liability Company,

Defendants-Appellees.

No.    21-16626

D.C. No. 4:14-cv-05615-JST

Appeal from the United States District Court
for the Northern District of California
Jon S. Tigar, District Judge, Presiding

Argued and Submitted October 18, 2022
San Francisco, California

Before:  J. Clifford Wallace, Sidney R. Thomas, and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Sidney R. Thomas

# SUMMARY[*]

### Class Action Fairness Act / Attorneys' Fees

The panel affirmed the district court's judgment awarding attorneys' fees as part of a settlement agreement under the Class Action Fairness Act ("CAFA") in actions brought by objectors to the settlement between Uber Technologies, Inc. and a plaintiff class of Uber customers.

The district court certified a class of approximately 22.4 million members and approved a settlement that provided both monetary and injunctive relief. The district court held that CAFA's attorney fee restrictions did not apply. Plaintiffs had requested $8.125 million in fees—25% of the face value of the settlement fund and a 4.4 multiplier on their lodestar of $1,961,905. The district court, applying the percentage-of-fund method, granted fees but reduced the award to $5,689,440, which was approximately 17.5% of the face value of the fund and 2.9 times the lodestar. Three objectors appealed the fee award.

The panel held that the settlement was not a coupon settlement, and, therefore, not subject to the restrictions on the award of attorneys' fees to class counsel imposed by CAFA, 28 U.S.C. § 1712. The panel applied the three factors identified in *Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015), to determine whether a particular instance of class relief was a coupon. The first *Online DVD* factor focuses on whether class members receive only a discount on services and must pay more out of pocket to redeem their class benefits. Although most class members' settlement awards in this case are too small to purchase an Uber ride without paying more out of pocket, the panel held this factor weighs against defining the credits as coupons because class members can claim their reward up-front and may also passively receive cash if they do not use their credit. The second *Online DVD* factor is whether the credit is valid only for select products or services. Because the credit is valid only for Uber services, the panel held that the second factor favors construction of the settlement as a coupon settlement. The third *Online DVD* factor is how much flexibility the credits provide. The reversionary cash payment provides a flexible alternative to using credits, and structuring the

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

payment in this fashion saves administrative expenses. The panel held that the third factor favors holding the settlement was not a coupon settlement. Because two of the three *Online DVD* factors favor characterizing the settlement as a non-coupon settlement, the district court did not err in concluding that the settlement was not a coupon settlement within the meaning of CAFA.

The panel held that the district court did not abuse its discretion in calculating class counsel's fee award. The district court did not err in awarding fees for hours spent pursuing unsuccessful settlements. The second, and final, settlement merely amended the first, so the hours spent negotiating the first settlement were not redundant or unnecessary. The district court did not otherwise abuse its discretion in making the fee award.

## COUNSEL

Theodore W. Maya (argued) and Robert R. Ahdoot, Ahdoot & Wolfson PC, Burbank, California; Alredo Torrijos, Arias Sanguinetti Stahle & Torrijos LLP, Los Angeles, California; for Plaintiffs-Appellees Byron McKnight, Julian Mena, Todd Schreiber, Nate Coolidge, and Ernesto Mejia.

N. Albert Bacharach Jr. (argued), N. Albert Bacharach Jr., Gainesville, Florida, for Objector-Appellant Jennifer Hinojosa.

Michael David Harbour (argued), Irell & Menalla LLP, Los Angeles, California; A. Matthew Ashley and Andra Barmash Greene, Irell & Manella LLP, Newport Beach, California; for Defendants-Appellees.

S.R. THOMAS, Circuit Judge:

In this consolidated appeal, we consider whether a class action settlement is a "coupon settlement" and therefore subject to the restrictions on the award of attorney fees to class counsel imposed by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1712. We conclude the settlement is not a coupon settlement, and we affirm the judgment of the district court.[1]

I

In the underlying case, McKnight and other Plaintiffs-Appellees ("Plaintiffs") represent a class that brought breach of contract and consumer law claims against Uber Technologies, Inc. and Rasier, LLC ("Uber") alleging Uber misrepresented "its 'Safe Rides Fee' and the safety measures, background checks, and other efforts it takes to provide safety for its customers."

The parties reached an initial settlement in early 2016. However, the district court found that the proposed class included Uber customers who had not been charged the allegedly misrepresented fee and that the proposed settlement failed to distribute funds appropriately to class members. The district court

---

[1] We have jurisdiction over the prematurely filed appeals of Hudson and Hinojosa because we deem the premature appeals filed as of the date of entry of final judgment. Fed. R. Civ. P. 4(a)(2). *Adtrader, Inc. v. Google LLC*, 7 F.4th 803, 805 (9th Cir. 2021), is not to the contrary because litigation there was ongoing in the district court.

4

therefore denied both certification of the proposed class and preliminary approval of the proposed settlement.

The parties reached a revised settlement in June 2017 (the "Settlement"). In August 2017, the district court granted preliminary approval and certified a settlement class of approximately 22.4 million members—essentially anyone who used Uber ridesharing services in the United States between January 1, 2013 and January 31, 2016 and was charged a Safe Rides Fee. The district court granted final approval of the Settlement in August 2019.

The Settlement provides both monetary and injunctive relief. Uber will pay $32.5 million into a "non-reversionary settlement fund." Class members will receive $0.25 from the fund for the first Safe Rides Fee they were charged and $0.05 for each subsequent fee. The average class member is expected to receive $1.07.

Settlement funds will be paid out to class members in several ways and stages. First, class members had the option to submit a claim form and receive their share in cash, via PayPal or eCheck. Out of more than 22 million estimated class members, only 82,375 submitted a claim form by the deadline and elected this up-front cash payment. Second, any class member who has an Uber account and did not submit a claim form for an up-front cash payment will have their

Settlement share credited to their Uber account. If a class member no longer has an Uber account, that share will be distributed *cy pres* to the National Consumer Law Center. Third, after one year, Uber will make a one-time attempt to remit any unused credit, minus an estimated $0.07 transaction fee charged by the payment processor, to the class member's payment account on file with Uber. Three days before attempting this payment, the settlement administrator will email a notice to all class members who have not redeemed their credit. The notice will inform the class member of the need for accurate and current credit card or other payment account information for the attempted payment to succeed. Finally, any leftover Settlement funds that are not distributed to class members will be distributed *cy pres* to the National Consumer Law Center.

As for injunctive relief, the Settlement prohibits Uber from charging a Safe Rides Fee and generally limits the representations Uber may make as to its driver background check policies and the safety of its services.

In its August 2019 order granting final approval to the Settlement, the district court stated "the settlement is sufficiently coupon-like to warrant application of 28 U.S.C. § 1712." Because Plaintiffs' first motion for attorney fees did not comply with CAFA's restrictions on the calculation of fee awards in

6

coupon settlements, the district court ordered Plaintiffs to file an amended motion for fees.

After further briefing, the district court concluded "that it erred in its previous order in determining that [the Settlement] is a coupon settlement" for two reasons. First, the court stated it had previously over-emphasized the small size of the average award and under-emphasized the availability of the cash option. Reconsidering, the district court found "there was nothing coercive about the amount of the credit" because "class members could have chosen to receive cash instead of a coupon." Second, the district court decided it had erred by considering that few class members would take the time to submit a claim due to the small size of the average award. This fact "may have some bearing on the fairness and adequacy of the settlement," the district court reasoned, "but it is irrelevant to the coupon analysis because the Court already determined that the amount itself represented a reasonable compromise."

Having held that CAFA's attorney fee restrictions did not apply, the district court reconsidered Plaintiffs' first fee request "unburdened by the coupon requirements of CAFA." Plaintiffs had requested $8.125 million in fees—25% of the face value of the fund and a 4.14 multiplier on their lodestar of $1,961,905. The district court, applying the percentage-of-fund method, granted fees but

7

reduced the award to $5,689,440, which is approximately 17.5% of the face value of the fund and 2.9 times the lodestar. While recognizing that 25% of the fund is a "presumptively reasonable amount," the district court reduced the award because the Settlement amount fell near the bottom of the "range of possible approval," and because, on a lodestar cross-check, even the reduced fee award granted a healthy multiplier on the fees actually incurred. The district court also awarded Plaintiffs their costs. Three objectors to the Settlement now appeal the district court's fee award. The Objector-Appellants principally contend the district court erred by not applying CAFA's attorney fee provisions. They also argue the district court abused its discretion in several ways when calculating the award.

II

We review the applicability of CAFA's coupon provisions to a class action settlement agreement de novo. *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 603 (9th Cir. 2021). We conclude the Settlement here is not a coupon settlement.

Congress enacted CAFA in part out of "concern about settlements when class members receive little or no value, including settlements in which 'counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value.'" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 950 (9th Cir. 2015) (quoting Class Action Fairness Act of 2005, Pub. L. No. 109-2, § 2,

8

119 Stat. 4 (2005)).  Section 1712 addresses this concern in two ways.  First, under § 1712(e), courts must apply "heightened scrutiny" when approving settlement agreements awarding coupon relief.  *Id.* at 949.  Second, courts must apply "a series of specific rules" to attorney fee awards in coupon settlements under § 1712(a)–(c).  *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013).  Where a settlement awards both coupon and non-coupon relief, such as monetary or injunctive relief, "the total fee award . . . is the sum of: (i) 'a reasonable contingency fee based on the actual redemption value of the coupons'" and "(ii) 'a reasonable lodestar amount to compensate class counsel for any non-coupon relief obtained.'"  *Chambers v. Whirlpool Corp.*, 980 F.3d 645, 659, 660 (9th Cir. 2020) (quoting *HP Inkjet*, 716 F.3d at 1184–85).  Courts may use the lodestar approach in these "mixed settlements" if they do so "without reference to the dollar value of the [coupon relief]" or if they account for redemption values.  *Id.* (quoting *In re Easysaver Rewards Litig.,* 906 F.3d 747, 759 (9th Cir. 2018))*.*  Courts may not "approximate the ultimate value of a settlement"; they must use the actual "redemption value of the coupons."  *Easysaver,* 906 F.3d at 759.

Section 1712 only applies here if the Settlement is a "coupon settlement." *Online DVD*, 779 F.3d at 950.  The term "coupon" is undefined in the statute.  We apply the three factors identified in *Online DVD* to determine whether a particular

instance of class relief is a coupon: "(1) whether class members have 'to hand over more of their own money before they can take advantage of' a credit, (2) whether the credit is valid only 'for select products or services,' and (3) how much flexibility the credit provides, including whether it expires or is freely transferrable." *Easysaver*, 906 F.3d at 755 (quoting *Online DVD*, 779 F.3d at 951). No single factor is dispositive. *McKinney-Drobnis*, 16 F.4th at 605.

Here, the first and third *Online DVD* factors weigh against defining the credits as coupons, while the second factor weighs in favor.

### A

The first *Online DVD* factor focuses on whether class members receive only a discount on services and must pay more out of pocket to redeem their class benefits. In this case, class payouts are based on the number of "Safe Rides Fees" that each individual class member incurred. The average award is approximately $1.07. The largest single award is estimated at $135.40, but a majority of class members will receive $0.35 or less. Although most class members' settlement awards are too small to purchase an Uber ride without paying more out of pocket, this factor weighs against defining the credits as coupons because class members can claim their reward up-front in cash and may also passively receive cash if they do not use their credit.

10

This conclusion is consistent with our precedent. In *Online DVD*, we considered a settlement that provided the average class member with a choice between $12 in cash or a $12 Walmart gift card, and held that the gift cards were not coupons under CAFA. 779 F.3d at 952. We did so, in part, because those "who selected gift cards must have valued them at close to face value, because they selected them over essentially the same value in cash." *Easysaver*, 906 F.3d at 758 (interpreting *Online DVD*). The *Online DVD* settlement was therefore "similar to an all-cash settlement." *Id.* Here, class members may have to pay more out of pocket to use the credits, but as in *Online DVD*, those who use the credits are likely to value them at "close to face value" because they will have selected the credit over the cash options. *See id.* It is reasonable to believe, then, that those class members "would have viewed the . . . credit as equivalently useful to . . . cash." *Id.*

*Easysaver* and *Chambers* are not to the contrary as they involved settlements that provided some credit and some cash relief, rather than an option to obtain the entire relief in cash. *Chambers*, 980 F.3d at 655; *Easysaver*, 906 F.3d at 757–58. In *Easysaver*, class members could submit a claim to obtain cash reimbursement of fraudulent fees and were also emailed a $20 credit to the defendant's e-store. 906 F.3d at 753. In *Chambers*, the settlement provided for a rebate granting 10%–20% off a dishwasher and some class members also received cash relief. 980 F.3d at

11

655. In neither case could class members redeem the credit/rebate portion of the relief for cash. *Id.*; *Easysaver*, 906 F.3d at 757–58. The credits and rebates could not be used without paying more out of pocket, so the first *Online DVD* factor weighed in favor of defining those portions of the settlement relief as coupons. *Chambers*, 980 F.3d at 660; *Easysaver*, 906 F.3d at 757–58. We held that the *Easysaver* credits and the *Chambers* rebates were both coupons under CAFA. *Chambers*, 980 F.3d at 660; *Easysaver*, 906 F.3d at 758. In contrast, here, all class members who receive credits have the option, both before and after receiving the credit, to receive cash instead. Thus, class members do not need to spend out of pocket to redeem their relief. The first *Online DVD* factor therefore favors not treating the credits as coupons.

B

The second *Online DVD* factor is whether the credit is valid only "for select products or services." 779 F.3d at 951. In this case, the credit is valid only for Uber services, so the second factor favors construction of the Settlement as a coupon settlement. Although Uber Eats users may be able to purchase a wide range of products from retailers like RiteAid or local grocers, they still must do so through Uber services that have allegedly injured them. *See Chambers*, 980 F.3d at 660 ("the rebate applies only to . . . the very brands that allegedly contained

12

the . . . defect"). Though Uber's services may not be quite as limited as those in *Chambers* (dishwashers), *Easysaver* (flower, chocolate, and fruit basket delivery), or *McKinney-Drobnis* (massage and spa products and services), this factor still weighs in favor of holding the credits are coupons.

## C

The third *Online DVD* factor is how much flexibility the credit provides, including whether it expires or is freely transferrable. *Online DVD*, 779 F.3d at 951. In this case, the credits are not transferable and technically expire after one year. But upon expiration, the credits become cash without requiring further action by the class member, and there are no blackout dates. The reversionary cash payment provides a flexible alternative to using the credits, and structuring the payment in this fashion saves administrative expense. Thus, the third factor favors holding that the Settlement was not a coupon settlement.

## D

Because two of the three *Online DVD* factors favor characterizing the Settlement as a non-coupon settlement, the district court did not err in concluding that the Settlement was not a coupon settlement within the meaning of CAFA. To be sure, the amounts to be distributed are modest, even minuscule. However, the amount paid in settlement is properly the subject of a fairness hearing; unless the

13

amount is disproportionate to the actual value, it is not determinative of whether the Settlement is a coupon settlement or not.

## III

The district court did not abuse its discretion in calculating class counsel's fee award. *See In re Hyundai & Kia Fuel Economy Litigation*, 926 F.3d 539, 556 (2019) (en banc) (defining standard of review). The court did not err in awarding fees for hours spent pursuing unsuccessful settlements. Although a court should not award fees for "hours that are excessive, redundant, or otherwise unnecessary," *Hensley v. Eckerhart*, 461 U.S. 424, 434–35 (1983), a district court is not precluded from compensating attorneys for time spent negotiating unsuccessful settlements, so long as the fees are not "excessive, redundant, or otherwise unnecessary." Here, the second, and final, settlement merely amended the first, so the hours spent negotiating the first settlement were not redundant or unnecessary.

The district court did not otherwise abuse its discretion in making the fee award. The district court reduced the fee award below the 25% benchmark because of the modest degree of success and because it found awarding the 25% benchmark would have overcompensated class counsel compared to their lodestar. The district court also considered the litigation risk faced by class counsel, including the risk that Uber may have "successfully asserted the arbitration

14

agreements and class action waivers in its customer agreements." The district court noted that the lodestar multiplier was reasonable in comparison to other awards. *See Vizcaino v. Microsoft Corp.* 290 F.3d 1043, 1051 n.6 (9th Cir. 2002).

The district court thus did not abuse its discretion in making the fee award.

## IV

In sum, the district court correctly concluded that the Settlement was not a coupon settlement within the meaning of CAFA, and did not abuse its discretion in making the fee award. We need not, and do not, reach any other issue urged by the parties.[2]

**AFFIRMED.**

---

[2] We note that Objector-Appellant Morgan contends that the district court erred in approving the Settlement without considering the redemption rate of coupons. However, Morgan did not present this argument to the district court, and we decline to entertain it for the first time on appeal. *See Padgett v. Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009).