**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

AUG 8 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



KARLA MAREE; MOURAD GUERDAD, on behalf of themselves and all others similarly situated,

   Plaintiffs-Appellees,

 v.

JANA CASTANARES; DENNIS CASTANARES,

   Objectors-Appellants,

 v.

DEUTSCHE LUFTHANSA A.G.,

   Defendant-Appellee.

No. 23-55795

D.C. No. 8:20-cv-00885-SVW-MRW

MEMORANDUM*

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted October 24, 2024
San Francisco, California

Before:  S.R. THOMAS, WARDLAW, and COLLINS, Circuit Judges.

Objectors-Appellants Jana Castanares and Dennis Castanares appeal the

district court's order granting class certification and final approval of a class

settlement reached by Plaintiffs-Appellees Karla Maree and Mourad Guerdad and

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Defendant-Appellee Deutsche Lufthansa A.G. ("Lufthansa") resolving claims that Lufthansa failed to timely provide refunds to customers after cancelling flights during the Covid pandemic. We have jurisdiction under 28 U.S.C. § 1291 and review for abuse of discretion. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc). We vacate the order granting class certification and final settlement approval, and we remand for further proceedings.

1. The settlement resolves two putative class actions against Lufthansa. The first ("the *Castanares* action") was filed by Objectors-Appellants' relatives, who purchased their tickets directly from Lufthansa. The second ("the *Maree* action") was filed the following day by Maree, who purchased her ticket indirectly through the travel agent Expedia. Lufthansa moved to compel arbitration of Maree's claims, arguing that she was bound by a mandatory arbitration provision in Expedia's terms of use. The district court denied Lufthansa's motion but later stayed the *Maree* action pending Lufthansa's interlocutory appeal.[1] Because Lufthansa had no mandatory arbitration provision in its contracts with direct purchasers, the court denied Lufthansa's motion to likewise stay the *Castanares* action, which proceeded to discovery.

One week after the *Maree* action was stayed, Maree and Lufthansa engaged

---

[1] That appeal remains technically pending, but due to the ensuing mediation and settlement between Maree and Lufthansa, no briefing has occurred.

in a mediation session with a private mediator (who was a former federal district judge), without the involvement or knowledge of the district court or the *Castanares* Plaintiffs. That same day, Maree and Lufthansa executed a "binding term sheet" agreeing to settle claims on behalf of both direct and indirect purchasers whose flights Lufthansa had cancelled. About six weeks later, Maree amended her complaint to name Guerdad, a direct purchaser who was not involved in the mediation between Maree and Lufthansa, as an additional class representative, and the two moved for provisional class certification and preliminary approval of the settlement four days later.

Under the proposed claims-made settlement, class members who submit a claim form within the designated claims period are entitled to the same relief, regardless of whether they are direct or indirect purchasers. Claimants whom Lufthansa had already refunded will receive their choice of $10 cash or a $45 voucher valid for future travel on Lufthansa or certain subsidiary airlines within two years, while claimants whom Lufthansa had not yet refunded will receive a refund plus an "interest payment" of 1% of the refunded amount. The settlement caps Lufthansa's total payments at $3.5 million, excluding refunds (which Lufthansa was already paying to customers upon request), but including (1) the $10 cash, $45 voucher, and 1% interest payments to claimants; (2) administration costs; (3) up to $875,000 in class counsel's fees; and (4) awards to the class

3

representatives of up to $2,000 each.

After initially denying the motion for provisional class certification and preliminary approval of the settlement, the district court later granted reconsideration and granted the motion. About three months later, midway through the claims period, Lufthansa filed, and the district court granted, an unopposed ex parte application to include in the settlement a $500,000 minimum distribution floor, such that any amount under $500,000 not distributed in the form of $10 cash, $45 vouchers, or 1% interest payments will be paid pro rata to class members who timely file a claim form. Toward the end of the claims period, Maree and Guerdad filed a motion for class certification and final settlement approval, and a separate motion for $875,000 in class counsel's fees and costs and $2,000 in class representative awards to Maree and Guerdad each.

The district court granted class certification and final approval of the settlement in August 2023.[2] The court's order summarized the results of the claims process as follows. Of the 166,360 members that the district court estimated to be in the class, 106,203 received direct notice of the settlement, representing approximately 64% of the class, and a digital notice campaign and press release

---

[2] The court, however, did not act on the *Maree* Plaintiffs' motion for class counsel's fees and costs and class representative awards, which Lufthansa did not oppose. The court also subsequently denied the *Maree* Plaintiffs' request for an immediate ruling on that motion. The motion remains pending, presumably awaiting the outcome of this appeal.

received about 8.6 million views.[3]  As of July 31, 2023, 21,419 claims had been filed, representing approximately 13% of the class.  Among the claimants, 18,470 chose to receive $10 cash; 1,947 chose to receive a $45 voucher; and 1,002 requested refunds, plus 1% interest payments that the court estimated will average approximately $18.16 each.  Thus, Lufthansa's payments to the class, excluding refunds, are expected to total approximately $290,511.  After the pro rata adjustments necessary in light of the $500,000 minimum distribution to the class are made, claimants receiving cash will ultimately receive approximately $17.50, claimants receiving vouchers will receive about $78.75, and claimants receiving 1% interest payments will receive about $31.78.[4]  Objectors-Appellants timely appealed.

2.  "'[S]ettlement class actions present unique due process concerns for absent class members,' and the district court has a fiduciary duty to look after the interests of those absent class members." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (citation omitted).  The district court therefore "may approve" a class settlement "only on finding that it is fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2).  "To survive appellate review, the district court must show it has

---

[3] The court's order erroneously stated that the digital notice campaign and press release received about 8.7 million views.  That number appears to include the 106,203 direct notices that were sent to class members.

[4] The court stated that these numbers "will likely be lower" because they were calculated before the last 63 claims were filed.

explored comprehensively all factors, and must give a reasoned response to all non-frivolous objections." *Allen*, 787 F.3d at 1223–24 (citation omitted).

When, as here, a settlement is negotiated before class certification, it "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (citation omitted). "This more exacting review is warranted to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Id*. at 1049 (simplified). In *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 947 (9th Cir. 2011), we identified three "'subtle signs' of collusion for which we require district courts to look." *Roes*, 944 F.3d at 1049 (citation omitted). These "*Bluetooth* factors" are: "(1) when counsel receive a disproportionate distribution of the settlement; (2) when the parties negotiate a clear sailing arrangement (*i.e.*, an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed [funds] to the defendant." *Allen*, 787 F.3d at 1224 (simplified). "The presence of these three signs is not a death knell—but when they exist, they require the district court to examine them, develop the record to support its final approval decision, and thereby assure itself that the fees awarded in the agreement

were not unreasonably high." *Kim v. Allison*, 8 F.4th 1170, 1180 (9th Cir. 2021) (simplified).

The district court failed to adequately scrutinize the first of these *Bluetooth* factors. Citing our observation that "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award," *In re Bluetooth*, 654 F.3d at 942 (citation omitted), the court held that the first *Bluetooth* factor was not present because "[t]he fees provided to Maree's counsel align with [that] 25% benchmark." In so holding, the court apparently reasoned that class counsel's $875,000 fee was 25% of the $3.5 million cap on Lufthansa's total payments under the settlement. That reasoning is flawed in at least two respects.

*First*, the district court "calculated the settlement value based on a totally unrealistic claims rate . . . , and then found the attorneys' fee award proportional to that inflated settlement value." *Kim*, 8 F.4th at 1180. The $3.5 million cap on Lufthansa's total payments was unlikely ever to be reached and was therefore an inappropriate benchmark for assessing class counsel's proposed $875,000 fee. Even with what the court concluded was a "substantially higher than . . . average claims rate" of approximately 13%, Lufthansa will pay only $500,000 to the class, plus an estimated $182,324 in administration costs. Measured against this actual value to the class, class counsel's proposed $875,000 fee well exceeds the typical 25% benchmark. Moreover, Lufthansa will pay $500,000 to the class only because

7

it volunteered to do so, without any additional consideration in return, midway through the claims period after the district court had already granted preliminary approval of the settlement. Under the original terms of the settlement, Lufthansa's payments to the class would have been estimated at around $290,511.

Plaintiffs-Appellees argue that the settlement is in fact valued at about $3.5 million because, in addition to service awards, class counsel's fees, administration costs, and the $500,000 minimum distribution floor, Lufthansa is also paying an estimated $1.8 million in refunds to the class. But the district court did not indicate that it included refunds in its valuation of the settlement for purposes of the first *Bluetooth* factor; on the contrary, at one point in its final order approving the settlement, the court acknowledged that the "settlement is about interest owed to the class not the underlying refunds." The settling parties' reliance on refunds to justify the court's conclusion post-hoc cannot cure the court's failure to carry its "*procedural* burden" of comprehensively reviewing the settlement for collusion. *Allen*, 787 F.3d at 1224 (emphasis added); *see McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 612 (9th Cir. 2021) ("[B]ecause we hold the court to a higher procedural standard, the court must 'provide the necessary explanations' in making [its fairness] finding." (citation omitted)). Moreover, "the true benefit to the plaintiff class . . . is a matter of speculation and may be far less than" $1.8 million, *Staton v. Boeing Co.*, 327 F.3d 938, 973 (9th Cir. 2003), given that Lufthansa was already

8

providing refunds to anyone who requested them even before the settlement was reached. We have held in similar circumstances that it would be erroneous to simply take the defendant's outlays at face value without further scrutiny. *See, e.g.*, *id*. at 973–74 (questioning the value of a settlement provision committing the defendant to spend at least $3.65 million implementing certain employment policies and practices where some "consist[ed] of steps" that the defendant already "had apparently decided to take on its own, even before it entered the settlement"); *cf. Roes*, 944 F.3d at 1055–56 (requiring the district court to explain why a settlement's injunctive relief provision, which was challenged by objectors as "essentially worthless because the supposedly changed business practices had already been adopted years prior to the settlement," provided meaningful relief that was worth $1 million).

*Second*, the district court failed to examine the extent to which the vouchers awarded to class members may overstate the actual value of the settlement. When evaluating a voucher's actual value to the class for purposes of the first *Bluetooth* factor, we consider many of the same factors that define whether the voucher constitutes a "coupon" that triggers the heightened protections of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1712. *See Roes*, 944 F.3d at 1052 (explaining that "some of the same concerns applicable to coupon settlements also apply" when scrutinizing for collusion a class settlement that awards vouchers,

9

"[r]egardless of whether the . . . vouchers are officially 'coupons' within the meaning of [CAFA]"). These factors include: "(1) whether class members have 'to hand over more of their own money before they can take advantage of' a credit, (2) whether the credit is valid only 'for select products or services,' and (3) how much flexibility the credit provides, including whether it expires or is freely transferrable." *In re Easysaver Rewards Litig.*, 906 F.3d 747, 755 (9th Cir. 2018) (citation omitted).

All three factors plausibly apply to the vouchers here. Class members are unlikely to find flight tickets for less than the face value of the voucher and therefore will likely have to make up any difference with their own money to take advantage of the voucher. The vouchers are valid only for select services—namely, future travel on Lufthansa and certain subsidiary airlines. And although the vouchers are freely transferrable, they cannot be redeemed for cash, and they expire after two years. Taken together, these factors suggest a "danger of unjustifiably inflating the settlement value of [vouchers]," one made "even more grave" because "the value of unused [vouchers] will revert back to defendants." *Roes*, 944 F.3d at 1053. The district court failed to address these potential limitations and whether they qualify the vouchers as coupons under CAFA or otherwise reduce the settlement's value to the class.

In sum, the district court's conclusory statement that class counsel will not

10

receive a disproportionate distribution of the settlement was insufficient to satisfy its heightened procedural burden. "[P]articularly in light of the specter of implicit collusion raised by" other aspects of the settlement—including the reversion of funds to Lufthansa, Lufthansa's voluntary concession of a $500,000 minimum distribution floor after the settlement had been preliminarily approved, the stay on the *Maree* action pending appeal, and the seemingly clandestine way negotiations were conducted—"the district court had an obligation to question the disproportionate cash distribution to attorneys' fees, substantively address concerns that the settlement value was inflated, and clearly explain why the total benefits to the class justified the fees awarded." *Roes*, 944 F.3d at 1056; *see also McKinney-Drobnis*, 16 F.4th at 611. "Because the district court did not provide such explanation, we must vacate the Approval Order and remand for further consideration." *In re Bluetooth*, 654 F.3d at 949.

3. Objectors-Appellants also challenge the adequacy of the class representatives under Federal Rule of Civil Procedure 23(a)(4). The district court recognized that "whether Plaintiff Maree is an adequate representative for direct purchasers" was "a close question" because her claim, unlike those of direct purchasers, was potentially subject to a mandatory arbitration provision, and her case had been stayed pending appeal of that issue. But, the court reasoned, it need not resolve the question of Maree's adequacy because Maree had amended her

11

complaint to name Guerdad, a direct purchaser, as an additional class representative. "Although Plaintiff Guerdad was added late to the case," the court stated, "Plaintiff Guerdad's declaration persuades the Court that he is an adequate representative of direct purchasers."

The district court's reliance on Guerdad's declaration to establish adequacy was erroneous, and we therefore vacate class certification and remand for further consideration. Nowhere in Guerdad's declaration did he address the crucial fact that Maree and Lufthansa executed a binding term sheet setting forth the material terms of the settlement before he was named a class representative. *Cf. In re Hyundai*, 926 F.3d at 566 (explaining that "due process 'requires that the named plaintiff *at all times* adequately represent the interests of the absent class members,'" a "requirement . . . formalized in Rule 23(a)(4)" (emphasis added) (citation omitted)); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 n.31 (1999) (noting that "the named representatives were not even named until after the agreement in principle was reached, and they then relied on class counsel in subsequent settlement negotiations" (simplified)). His declaration did not specify whether—and, if so, when and to what extent—he was made aware of the binding term sheet and its terms; what, if anything, he understood about the viability of rejecting the settlement or pursuing further negotiations by the time he joined the litigation as a class representative; or any other facts that would "actually *prove*"

12

that he adequately represented the class notwithstanding his absence from the mediation where the material terms of the settlement were reached. *Lytle v. Nutramax Laboratories, Inc.*, 114 F.4th 1011, 1023 (9th Cir. 2024) (citation omitted). Instead, it merely stated in conclusory terms that he discussed, reviewed, and approved the settlement, and that he believed the settlement was fair, reasonable, and adequate. The court's reliance on these threadbare recitals was insufficient to satisfy its "heightened" obligation to conduct a "rigorous" analysis of the well-grounded and specific concerns about Guerdad's adequacy. *In re Hyundai*, 926 F.3d at 556–57 (citations omitted).

Nor does the court's reliance on Guerdad's adequacy completely resolve the objection that "Plaintiff Maree was potentially subject to a mandatory arbitration clause, which made the indirect purchasers' prospects for recovery weaker than the direct purchasers." That concern about a structural division in the class between direct and indirect purchasers raises the question whether subclasses are warranted to ensure that the two groups' potentially conflicting interests are adequately represented. *See Ortiz*, 527 U.S. at 857 (explaining that, where class members' claims systematically differ in value, "[t]he very decision to treat them all the same is itself an allocation decision with results almost certainly different from the results that those with [more valuable] claims . . . would have chosen"); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 627 (1997) ("[W]here differences among

13

members of a class are such that subclasses must be established, we know of no authority that permits a court to approve a settlement without creating subclasses on the basis of consents by members of a unitary class, some of whom happen to be members of the distinct subgroups." (alteration in original) (citation omitted)). Because that question was not addressed below, we leave it to the district court to consider in the first instance on remand.

For the foregoing reasons, we vacate the court's final order granting class certification and settlement approval, and we remand for further proceedings consistent with this memorandum.

**VACATED AND REMANDED.**